Good morning, Your Honor. Samuel Kornhauser for the appellants. I'd like to reserve five minutes for rebuttal. I know I've repeated this a lot in my brief, but I mean, I think the main issue in this case is that Mr. Sletten didn't suffer any loss. He was indemnified, he received his attorney's fees, he was just trying to make a profit, and there was no contract by his attorney. He got all of his attorney's fees. If there was any shortfall, he's entitled to the shortfall, he's not entitled to get paid twice. This is a contract action. It's a breach of contract. He's entitled to – all he's entitled to is his damages. The Bramalea case points it out and just sums it up in a nutshell. I mean, it says that in a breach of contract case, for indemnity, the plaintiff's entitled to contractual damages under the Contractual Damages Rule, which is that no one shall profit more from the breach of an obligation than from its full performance. So it doesn't matter where the money came from. If he's been compensated for his attorney's fees, he's been compensated. Also, if you take their position, I mean, I guess an example would be if, let's say Mr. Sletten was a corporate officer and he was on an expense account. He went out there and he worked a deal with the hotel manager here. Why don't you charge me double what this room rate really is and we'll split the difference? I don't think he'd be entitled to keep that difference. Even if he gave a check and then the hotel clerk gave him some money back and they split the difference, he wouldn't be allowed to come back against the corporation and say, here, here's my receipt for $300 when the room was 150. Not that's going on. I'm sorry. Please go ahead. Well, the controlling language is the language, of course, in the Declaration of Trust and then the trustee indemnification agreement. Exactly. The Declaration of Trust says the trust shall indemnify against all liabilities and expenses, including counsel fees reasonably incurred. And the trust indemnification agreement says fund agrees to indemnify and hold harmless for any losses. And you're arguing that counsel fees reasonably include, do not include counsel fees reasonably incurred if they are reimbursed from another source, but that if they are reimbursed from another source doesn't appear there. I don't think it needs to appear. It says, I think if you look at the indemnity, indemnification agreement, it says loss is sustained by the trustee. What they're asking is to read that language out. Well, the losses clearly were sustained at one point. And then they are reimbursed by firemen's. And does that make them not sustained for purposes of this agreement? Exactly, Your Honor. That's the question. That's really my point. Saying that the second document trumps the first. The language in the first document, the Declaration of Trust, saying reimbursement  is referencing but not for things reimbursed by somebody else, that that somehow should be overcome by the losses language in the second document. Well, I think they're integrated documents. So why shouldn't we read them both together and make them either or? Well, I don't think you can make them either or. Why not? Because I think the indemnification, the trustee indemnification agreement spells out or clarifies the language. I mean, that's the real indemnification agreement. So we should disregard the Declaration of Trust? I don't think you need to disregard the Declaration of Trust because it says for indemnify against liabilities. There's no liability if the attorney's fees have been paid for them. And it also says including amounts paid. So you've got to read out indemnify. You have to read out liabilities. And you have to read out paid under the trust agreement, Section 1002, to get to where Mr. Sletton is at. And I think it clarifies it by the trustee indemnification agreement that says that the fund agrees to indemnify the trustee for any losses sustained by the trustee. If he's been paid, he hasn't sustained a loss. And I guess we also have to remember that this is a federally regulated mutual fund. The agreement, the trust agreement, Section 1111, says that no provision will be honored if it violates any of the Federal securities laws. The Federal securities laws, and in particular Sections 36 and 47 of the Forty Act, say that and Section 1, subsection, Section 1A.8, says that a trustee can't benefit and a fund can't be operated for the benefit of a trustee. I mean, if, there's no provision. You've got to read the contract, I think, and the indemnity agreements. There's nothing that says you get paid twice. All you get, you the trustee, is you get indemnified. You know, I'm quite accustomed to various forms of insurance contracts that provide that the insurance company will pay losses. But if the insurance company wants to get out from under paying twice, that is to say to get out from under variations or approximations to the collateral source rule, that contract virtually always includes a clause or a paragraph, sometimes 25 pages, saying if you get compensation from another source, we're not paying. There is no such language here. Well, Your Honor, it's true there's no language that says if you get paid by somebody, specifically in the parties, I don't believe. I was one of the people that wrote this. And nobody was thinking that any trustee would, frankly, have the temerity to say reimburse me for amounts that I've been paid. That's what the language, losses sustained, is supposed to mean. And I think it's clear, and it also says, right after that, the trustee shall not be indemnified for any loss which would not be permitted to be indemnified under the Federal securities laws. So, I mean, that's not an insurance contract, but that's equivalent to saying, look, the Federal securities laws wouldn't allow you to get paid twice. The trust has a fiduciary duty not to, has a duty to its investors or shareholders not to pay you twice. We can't pay you exorbitant amounts. We can't pay you double. We can't pay you for losses that you didn't sustain. And that's what the provision about section 11.11 in the trust indemnification ‑‑ I'm sorry, the Declaration of Trust and the last paragraph in the trustee indemnification are about. And we've cited, Your Honors, to Securities and Exchange, an SEC release that deals with that situation, and it talks about indemnification under the Federal securities laws. And it says that the staff believes that an improper indemnification or payment or advance of legal expenses could constitute a breach of fiduciary duties involving personal misconduct under section 36 of the Forty Act or unlawful and willful conversion of an investment company's assets. So, I mean, the SEC has taken its position in this SEC release 11.333 that says, look, you can't have a deal, a scenario like that, or really, what happened here? If Mr. Sletton hadn't incurred any of those losses, he hadn't paid any, just submitted some phony bills, would we be ‑‑ would the fund be required to pay him? Yeah. But, of course, that's not this case. Well, it basically ‑‑ They were not phony bills. They were real bills. And the problem that you're pointing to, which is a real problem, is that he had another source that reimbursed him for some of them. Well, Your Honor, I just don't believe ‑‑ Your Honor, I don't believe the clerical source rule applies to a breach of contract. I think that's the law. Delaware law makes it very clear that if you contracted for some sort of reimbursement or indemnification, the fact that you might also receive money from another source does not prevent you from receiving under the indemnification agreement. I mean, that's just Delaware law. Well, respectfully, I think Nalbone makes that decision. In a tort situation, that's true. In a contract situation, I don't believe that that's true. On State Farm v. Nalbone, it says that there's nothing to prevent the parties from avoiding double recovery. You've got a contract for the double recovery. There's no contract here that says you get double recovery. Respectfully, the contract says just the opposite. You have to sustain a loss. And that's when they get indemnified. Mr. Sletton, and plus there's no evidence that he paid for any of that homeowner's insurance, but even if he had. But as I understand Delaware law, the only thing that's required is that money paying for it can't have come out of the fund. It doesn't matter that he may or may not have paid for it. The problem, he has a major problem if the fund has paid for it, which is why he lost on Chubb. But if the fund didn't pay for it, Delaware law says it doesn't matter if you're paying for it. Your mother gave it to you. Well, Your Honor, respectfully, I don't believe that's what Nalbone says. I don't think there's any case that's exactly on point in Delaware that deals with a breach of contract situation for an indemnity. The Chomason case, which the district court relied on, actually I believe supports us. And that was a situation where the director came in and basically under a subrogation claim on behalf of the one of the parties that actually did pay, was out of pocket, was entitled to recover in order to pay the other corporation, the tenant corporation that had actually paid. In this case, that's not going on. Mr. Here, what they're asking you to do is say, here, I'm Mr. Sletton, pay me another million and a half dollars of pure profit for a loss I didn't sustain, and I'll stick in my pocket, well, I'll stick half of it in my pocket, and I'll share the other half with my lawyer who's on a contingent fee who brought this case. And nobody's getting paid back, not like tenant in Delaware, not like the Nalbone case where the court said, you know, you've been paid by your employer, you, the victim of an auto accident, you don't get paid twice. There's going to be an offset because your employer has paid you. And that's really, I believe that's the law in Delaware. I know it's the law in California. If, even if it was, and I guess I'm arguing with you. I don't mean to. But even if it was, I think the Curtis case out of this circuit says that if the law and the Burks v. Lasky, Lasker case, U.S. Supreme Court case, says that if a State law, plural source rule, conflicts with Federal law, Federal securities law, Federal securities law is trumped. Federal securities laws, and particularly this release that we cited to you, say you don't get paid twice. You can't take advantage. You're a trustee. You're a fiduciary. You can't take advantage of your own fund. You can't profit at your own fund's expenses. He's the watchdog. Part of the reason they won in the trial below was because we heard for three weeks how Mr. Slatton was a watchdog, how he was carrying out, looking out for the interests of the shareholders when he fired my client and caused the fund to lose $200 million. He was a watchdog. He was looking out for their interests. As soon as he wins a case, he turns around. Now he's trying to make a $1.5 million profit on losses he hasn't sustained when the contract, the explicit terms of the contract say you have to sustain a loss. And they've got the burden of proof. There's all this talk about, well, we didn't, we didn't really get reimbursed because someday, even though it's been eight years, they might, some insurance company might come back and seek reimbursement. Well, the burden of proof is on them. They're the ones that are making the damage claim. And we cited, Your Honors, to C.L. Maddox, same kind of situation. Somebody had gotten paid, was trying to get paid twice, tried to argue, well, it was only a conditional payment because the insurance companies might come back against us. And the Eighth Circuit said, no, you come into court, you've got to have damages. You can't speculate. In fact, this Court, in Navalier v. Sletton, denied some claim that we had because it said, look, you can't speculate. You have to have actual damages. And in the C.L. Maddox case, the Court said, look, the insurance company may or may not come back. We don't know. It's been a long time. You've got to show us that they've come back against you because we're not going to give you a double recovery or a profit on speculation that they might come back. With regard to the release, I guess we'll ‑‑ there are a number of reasons why they're not entitled. I mean, one is they didn't really sustain a loss. I think that's the basic deal. They also released their claims. And Mr. Sletton released his claims when he signed that release. And he's already litigated this issue in the district court. Well, maybe I'll save my five minutes for rebuttal. Thank you.  Good morning, Your Honors. My name is Ralph Aldridge of Preston Gates Ellis on behalf of the appellee and the cross appellant, Kenneth Sletton. Let me start first with some of the facts of this case that are easy to gloss over but are absolutely crucial. First, my client paid for every one of the bills in this case, attorneys' fees and costs. There's no question about that. That's established in the record. Second, to the extent that he received any reimbursement for those payments, that reimbursement either from Chubb or from Fireman's Fund came with a reservation of rights to demand full repayment for all of the amounts that had been reimbursed. Those reservations were never relinquished, never withdrawn, never challenged, never conditioned in any way by the insurance companies. They're still out there today. Those are undisputed facts in this case. Are they out there in more than a theoretical fashion? I'm sorry, Your Honor? Are they out there in anything more than a theoretical fashion? Well, if you mean theoretical, meaning nobody knows what will happen, that's absolutely correct. Are you making regular reports to the insurance companies as to where the litigation stands? No, Your Honor, but these are public records. Do you have any knowledge that the insurance companies are monitoring the case? I have only reason to believe that, but, Your Honor, I can't say that I have knowledge, and there's certainly nothing in the record on that. All that's in the record is that there were communications between my client and the insurance companies. And if and when the insurance companies come after you for reimbursement, say Fireman's, you don't have a good defense about you guys sat on your rights and so on? Your Honor, there may be all kinds of defenses, and whatever defenses we may raise, we also have no way of knowing what a court will do with those defenses. And I think that's the important... Is there anything in the record from these insurance companies, in particular Fireman's, which I think is the one that you're really standing the chance of getting to keep that money, anything in the record that says from them in any affirmative way, we're coming after you? Nothing more than the reservation, Your Honor. You don't make a reservation unless you have some intention to avail yourself of it. Okay. And if I could make a point here that I think really goes to this issue, that is, there is a speculative quality as to whether or not, number one, they will bring an action, either or both of them, and two, whether or not they will succeed. We can't resolve that here, certainly not on the basis of anything that's in this record. Do you want us to affirm on the ground that, okay, there's a possibility that they come after you, but if it turns out they don't, you're going to give the money back? I think your answer is you don't want that. That is to say, what if the convincing argument to us is that there's a real possibility that this is not going to be a double recovery? And what if we affirm solely on the ground that we make it quite explicit that if there turns out to be a double recovery, you have to give the money back? I mean, that's where your argument is headed. Do you really want it to go there? Well, Your Honor, I think — let me tell you exactly where my argument is headed. My argument is headed that there's a risk out there. I understand that. And the point is my client ought not to face that risk. That risk ought not to be placed on my client. My client had a right to absolute, unconditional indemnification from the defendant fund. There's no question about that. But you can't solve the risk problem without really giving you what you want, which is, as Judge Fletcher is suggesting. Suppose we came out with a disposition that winds up saying, okay, you've got this risk, so for a given period of time we'll let the fund sit to, in effect, be an insurance policy against the risk. But if the insurance carrier doesn't come back and reclaim the money, then you don't get to keep it either. It goes back to the fund. That's a creative idea, but unfortunately it's not available at this point. The fund, the record shows the fund has been liquidated and the fund is gone. All that remains is a $2.5 million appeal bond that was there to secure the judgment and so that they could avoid enforcement actions while this matter was continuing. I don't understand. You mean if there's money that you have to end up paying back, that there's nobody there to collect? Nobody will be there to collect it. I'm sorry. I didn't understand. The argument is, I'm not sure I want to pursue this much further. I think you understand the point and I think you've given us your best answer. Right. My answer, and let me be sure that I have it clear again, is the question is there's a risk out there. Who should bear that risk? If the insurance companies come back against my client, then my client risks having a shortfall, not a windfall. Is that clear? Right. I think we both understand both. And because my client still hasn't even received reimbursement for the Chubb monies. So if in fact my client had received reimbursement for both the Chubb and the Fireman's Fund monies, so that my client was completely whole, and now if either of those came back, then you might have had a situation in which you could have had some sort of arrangement. You said the word, so my client is completely whole. That's not your argument. Your client has been made whole and more so. No, Your Honor. By the decision of the district court. You're not made whole, Your Honor, by an advancement of money subject to somebody pulling it back later on. You're still on the risk point. But that is true, Your Honor. You don't get, we're not made whole with respect to the $660,000. I understand the risk. Okay. And that's where we go back and the question is, as a matter of, you can't determine as a matter of fact what the insurance companies are going to do. Not even, not from the record, not from anything else. Okay. I understand the risk point. Right. But what you can determine is, as a matter of law, who should bear the risk. And that's the key, I think. I'll say it again. Please move on. Okay. I understand the risk point. Okay. I want to refer to the DeLuca case, which we had cited on our Rule 28J submission last week. It's a very important case. It really makes so many points clear here that I think were raised in the earlier argument that it's worth spending a little bit of time with that case. In the first place, and most importantly, DeLuca was faced with an argument just as we have here. There was no loss because somebody else already paid it. Now, in the DeLuca case, it's even a stronger argument, if you will, because the DeLuca didn't pay a dime. Her company made the payment. And the Court treated that company as a third party, said, okay, a third party made the payment. That was the argument that was being made by the indemnitor in that case. A third party made the payment. And that's not good enough. You're entitled to your indemnification even if a third party makes the payment. In that case, she was given a right to full advancement of fees for the remainder of the litigation and for a payment for the fees that had already been paid by that other company. But that helps you, that gets you where you want to get with Fireman's Fund. Right. I don't think it gets you where you want to get with Chubb. No. But, Your Honor, what they said, what gets us there is the policies that that was based upon. The Court in that case said this is, there's really two reasons why this is so important for us to not allow an indemnitor to escape its full obligation by citing the fact that some third party has paid. Two reasons for that. One is that it's inequitable for an indemnitor to get essentially a windfall if a third party comes in. And that windfall opportunity will discourage indemnitors from actually coming forward on their obligations. We don't want that as a matter of policy in Delaware. But I don't think that's responsive to what the district judge did and his finding with respect to Chubb. The district judge says you don't get reimbursement for the Chubb money because the Chubb policy, as it was purchased by NMFS, the Massachusetts Fund, and the Massachusetts Fund was being paid by the fund who's now your adversary. And therefore, since the Chubb policy was bought by the fund who's now your adversary, sorry, you don't get it. I agree he said that, Your Honor. But I think the Kaluga case responds to that point. And our response to that is that what he said was a finding of fact that he made based upon a comment that was made by Mr. Simon's counsel at oral argument on the summary judgment motions, and we presented contrary fact that, in fact, it wasn't paid by this fund, it was paid by MFS entirely by itself, and this fund didn't have any obligation for that, hence it wasn't appropriate. But that's not inconsistent with what the district judge found. The district judge found that the Chubb policy was indeed paid for by MFS. That's right, Your Honor, and that's inconsistent with the evidence that we offered. There was at least a material issue of fact on that that precluded summary judgment on that point. And that's if you – And who paid for the Chubb policy then in your view? MFS paid for the Chubb policy. Well, that's what I said, and that's what the district judge said. But he said that MFS – no, no, he said the fund paid for it. No, what he said was the fund hired MFS. Right. And he said that – and the fund paid – Therefore, the fund's – the MFS payment to Chubb is attributable within the meaning of the doctrine. I don't think there's a dispute as to fact. There's a dispute as to consequence. I think, Your Honor, it was – he didn't quite say it that way. He didn't say it was just attributable. He said, in fact, the payment had been made by the fund to MFS. The client insists that he paid Fireman's Fund, although it turns out there's not specific evidence on it, but everybody knows the insurance company doesn't offer the coverage for free. Right. Can't the same thing really be said about Chubb, that everybody knows that Chubb is being paid by the Massachusetts organization and that Massachusetts is getting money from the fund because it's now serving as the investment manager? I hear these arguments on both sides, and they strike me as being – stretching reality to the point where the rubber band breaks. I mean, don't we really know where the – where the wherewithal comes from in each case? Well, Your Honor, there is a difference between MFS and the fund that I think is an important difference. MFS has a right to reimbursement from the fund for expenses that it incurs on the fund's behalf. That's what was raised at the – at the argument, and we said we have the fund's expense records. Here they are, MFS's application for expenses. It doesn't include any – for insurance policy. So the – whatever MFS did, it did on its own. It did not do it on behalf of the fund, and it did not charge the fund for it. It didn't charge it separately. Well, yes. Absolutely right. Yeah, you could – It's part of the oral argument. But the point is we never had a chance to have those issues come out as a matter of fact. Your client doesn't claim that he paid for that policy, does he? No. Nor does the fund claim that they paid for the fireman's policy, so – He thinks that Chubb or MSF, for that matter, are acting out of the goodness of their heart because they find some worthy individual who ought to receive insurance coverage. No, it's more complicated than that, Your Honor. What happened is that our clients – my client was one of the independent trustees who removed the Navalier company from management of the fund and brought in MFS. When they brought in MFS, MFS asked them to be trustees of that fund. It was now an MFS-managed fund, and they asked these people to be trustees of that fund. Just as when they originally became trustees of the Navalier fund, they negotiated their arrangement with the fund and said, hey, I want to have clear insurance protection, which they had from the beginning, as well as the indemnification agreement. They went to MFS and they said, if we're going to take over for this fund, we want insurance to cover us as the MFS directors. And who's paying MFS? And MFS paid for that. No. Who's paying MFS? Well, you're right, Your Honor, that the fund paid MFS something. Sure. The question is whether or not it paid it for that insurance, I submit, and the answer is the evidence that was submitted said that it didn't. It seems to me alarm bells are going off all over the place. So suddenly your client's negotiating for his own personal interests somehow contrary to the interest of the fund for which he's a trustee. The idea that MSF is doing this out of the goodness of its heart or because it's going to strike a deal with your client, disregarding the fund altogether, seems to me to raise enormous problems with what you're trying to do. No, Your Honor. My client doesn't have any obligation to remain as a trustee of the fund at any point. He can resign. He can leave the fund. If somebody asks him to be a part of the fund, he's entitled to say, okay, I'll be a part of the fund provided that you give me the protections that I need as a trustee. These are not high-paying jobs. And so you don't want to have any risk that you're going to end up having a loss as a result of being involved in this at all. I mean, that would be a horrible thing. So you really do get, in this case, two agreements, the trust declaration and the trustee Mr. Kornhauser and Mr. Navalier allowed that insurance to lapse. And that's how they got into that situation. If there had been the fund insurance maintained, there wouldn't have been any question because the fund insurance would have paid for these. You're suggesting that Massachusetts can pay money to your client separately and independent of the fund, and your client is signing up with Massachusetts, so Massachusetts would be the independent or with the investment advisor? That cannot be.  The trustee's compensation has to come from the fund. I'm not suggesting that. What I'm suggesting is that my client could reach an understanding with MFS that MFS would provide him with insurance if he was going to be a trustee of their fund. That's a bribe. That's a bribe. Why should MSF have independent ability to pay the fund's trustee separately from MSF funds? That makes no sense. It's not paying him anything. It's simply providing him with insurance coverage under their policy. Well, that's just quibbling. Paying him and providing a benefit, what's the difference? Well, it's no different than this fund having decided to pay him insurance, pay insurance for him at the beginning. The fund can. The separate independent investment advisor can. I understand your point now. But the point is we're well beyond the record at this point. What I'm saying is none of this was we were not allowed to bring any of this out. Excuse me. I'm sorry. I think we are not beyond the record as far as I'm concerned in terms of what I need to know. And maybe you can tell me where I'm wrong. I think we have evidence in the record from which the district court could conclude that MFS paid Chubb for the DNO policy. Is that correct? You told me that that was true. Right. No, no, no. I said that we have in the record that MFS was paid by the fund. No. We don't have in the record that MFS was paid for its insurance policy by the fund. That's the distinction. You didn't hear what I said. I said we have in the record that MFS paid for the DNO policy. Oh, yes. That's in the record. And we have in the record that the fund compensated MFS for its management and advice services. There's no question about that. I need to know nothing more. Except this. We do know that there were specific submissions for reimbursement of expenses and none of  So that's where we are as far as the record is concerned. I've got plenty of record to hold you loose on the Chubb issue. I don't speak for my colleagues. Let me just say one other thing about the Chubb issue. If, in fact, the Chubb insurance covered my client, would Chubb have refused to pay unless my client agreed to allow them to reserve rights under that insurance policy to take all that money back ultimately? Would Chubb have refused to pay all of my client's expenses, which it did, and that's in the record? They only paid a portion of reimbursed, and all of that was a conditional reimbursement. And that was because Chubb said our policy does not cover your claims. Because it's an MFS policy, you're an MFS director, and all of these things happened before you became an MFS director. That's what all these claims are based on. So Chubb had an argument, or we wouldn't have had an agreement. Otherwise, they would have paid their money, and that would have been it. I think your client got very lucky that Chubb refused to pay all of it. Well, I wouldn't say lucky, Your Honor, because what my client is faced with is a situation where he's now not obtained indemnification from the fund, and yet Chubb can come back on him for the full $600-and-some-thousand, plus prejudgment interest, plus potentially attorney's fees. You can come back to him only in the event that you recover from the fund with respect to the uncompensated funds from Chubb. That's not right, Your Honor. Under Chubb's agreement with us, this is not under a policy. This is an agreement between us and Chubb as to what we would accept in order to get some payment. They reserve their right to come back and recover the entire amount. And what have they done? With regard to it, it can be. What have they done to pursue that? Well, Your Honor, I would submit the fact that they haven't done anything means simply that they wouldn't be likely to do anything until this case is over and my client gets whatever money he's going to get out of it. But, see, the argument that is independent of the possibility of reimbursement from the fund is their notion that somehow this isn't covered by the policy because it's before our time. That's not affected by anything that's going on in this courtroom. That argument is going to be good or bad regardless of what we say. Right. And if Chubb is successful in saying that they don't have any coverage and they're entitled to full reimbursement, they can get the whole $660,000 back, plus interest, plus attorney's fees. Let me ask you this. So we're now talking about over a million dollars that they'll take out. Let me ask you this because your time is running. There's a lot of other issues in the case. Right. One of them is the fee arrangement not for the original McLaughlin case but rather for this case itself. Yes. And you're claiming and have been given by the district court your fees in this case in accordance with your contingency fee agreement, which, as I understand it, was 40 percent or 50 percent if it goes up on appeal. Right, Your Honor. Let me ask you this. The reason this sort of comes at me is, of course, Mr. Slatton, assuming he wins, is not bargaining with his money. He's bargaining with the fund's money because it's the fund who's going to pay you. And so in that sense, he's absolutely neutral as to whether or not your contingency fee arrangement is 33 percent or 50 percent. So I need to ask a couple of questions. Do you customarily enter into contingency fee arrangements? Well, Your Honor, I'm in a different firm at this point than I was at the time that this happened. Did you then? At that time, I did customarily enter into contingency fee arrangements. I don't. Our current firm doesn't really do contingency work. And was there any inquiry by the district judge as to whether or not this was your customary percentage for contingency fee arrangements? I believe there was, Your Honor. I believe we submitted a declaration. When you say inquiry by the judge, I believe we submitted a declaration to that effect that that was a relatively common fee arrangement for contingency matters. Forty percent after trial, and then it goes up to 50 percent after an appeal. And remember, the award took place after the appeal had already been filed in this case. Well, yes, but what I'm after is in a situation where the client is not going to be the one paying the fee and then the question is reasonableness of the fee arrangement, there's obviously going to be some reason why the district judges want to make particularly close attention to it. And the district court was very careful about that. We also submitted all of our time records in connection with that case. This is not a time records case. This part of it is contingency fee. Right, but the court still has to determine that a contingency that they ask for is reasonable under the circumstances, and the court did. And the way you look at that is you look at the time records and you see what it would be on a time records basis, and if you had a situation where there was a lodestar analysis, then you would add something more to those lodestar. I read what the district court wrote on the point. Okay. And so the court recognized that our hourly basis was not that far off from the 50 percent, and keep in mind the 50 percent covered appeal. The court did not specifically say that. It might have recognized it, but it didn't say it. Right. And the court went on to talk about the other lodestar factors, the quality of the work that was done and the difficulty of the case and so forth, as to make the point that that was, in fact, a reasonable fee under all the circumstances. And keep in mind that covers the appeal, which is all the time we've been spending on this as well, Your Honor. So, you know, that number, that lodestar number would be probably in excess of the $770,000 that the court awarded in that case. Let me go back if I can. Since your time has expired, we'll save you or your client from having to bill an extra minute or two. Very well, Your Honor. I'd just like to finish by saying I think it's extremely important that the way the Delaware law reads, it says we want to make sure that people's rights to indemnification is not jeopardized by the risk that they might not get full indemnification if some third party has stepped in. That's a policy consideration. And I submit to you that where you have a situation where my client is bearing the risk of not getting full indemnification if these people come back, the policy suggests that that risk ought not to be borne by my client, but by the other side. Thank you, Mr. Aldridge. Mr. Kornhauser, we'll give you an extra minute or so if you need it, because counsel will consume a little extra time. Thank you, Your Honor. I'll try and be brief. Let me start at the end. If we walk out of here and this decision is affirmed, Mr. Sletten and his client are going to have at least a million and a half dollar profit. He hasn't lost any money. You asked him a number of questions. He couldn't. And in fact, during the trial, he was asked if any of the insurance companies had come back against him. And if you look at supplemental excerpt of record, page 679, Mr. Sletten Mr. Aldridge is the one that said no. So for him to sit here and say after eight years that those companies are going to come back, it's just and Well, in fairness, what he said was there was a risk. And I think we really understand this. All right, Your Honor. Okay. Well, then I guess what I'm really trying to say, and let me go back to this issue about it's a contract case. And the contract does not provide for double recovery. I know that those words in the declaration of trust, section 10.02, have been parsed ad infinitum. But there's nothing in there that says you get a double recovery. It says you get indemnified. I think the common sense meaning of indemnity is you have to have a loss. That's the definition in Black's dictionary. That's what the contract says. It says indemnified for expenses paid. Now, if paid means that you get a bill, you pay it, and then you get reimbursed and that means that you've been paid, then I think that's a whole new meaning for the word paid. And that's what the contract calls for. We didn't This DeLuca case. DeLuca has nothing to do with our case. That's an advancement case. That's advancing. There was no indemnity there. There was no finding that anybody was entitled to indemnity. And the woman, Ms. DeLuca, who was, I guess, the fired employee who was accused of stealing clients, her firm had paid and advanced those attorneys' fees. So she's saying I get to get reimbursed under the advancement provision because I, through my firm, not some stranger, not some third party, not insurance, not somebody else, I paid those attorneys' fees and I should get reimbursed for the advancement. And that's under 145E of the Delaware statute, which deals with advancement. It doesn't deal with indemnity. One last point, I guess. You know, probably shouldn't say this, but this case is about avarice. It's about trying to get more than you're entitled to. We had another We settled with Simon. He had exactly the same policy, the exact same MFS policy. Chubb paid, paid 100 percent. He was out $11,000. That's the same policy that covered Mr. Sletton, that Mr. Aldridge was there. And for whatever reason, he didn't, you know, he didn't want 100 percent or he didn't negotiate with them for 100 percent. But in the end, Chubb paid, paid Simon 100 cents on the dollar. And they came in and they came in and they were trying to make the same argument that Mr. Aldridge was making at first. They filed a claim for indemnity. And we ended up, and after the Court said, no, you don't get paid, at least partially, you get credit for, you don't get paid for insurance, we settled that case. We ended up paying them what they were out of pocket. And we would have done that, and we offered to do that with Mr. Sletton also. If he's out $100,000 or $200,000 and he hasn't been reimbursed by insurance, that means he suffered a loss. And we'll honor, and we would and always offered to honor our obligation to pay him what he was out of pocket, what his sustained loss was. I mean, out of pocket. Let me ask you this, which we haven't touched on at all. There's this lawsuit about, that's really a separate appeal with respect to the injunction. The damages? Yeah, yeah. The damages are the attorney's fee. At a minimum, they're the attorney's fees that we had to pay to fight it off. There's an attorney's fee provision in the indemnity, indemnification agreement. And they didn't have the use of their funds. The Grupo case said exactly the same thing. If you're deprived of the use of your assets. But you've got approved damages, right? And we didn't have an opportunity to do that. The judge, and I'd like the opportunity. You're the best judge of your own case, but it may be that this one's not worth litigating, given that there are probably going to be some attorney's fees problems, you know. I'll tell you what. If you reverse with regard to the fireman's fund, we won't litigate. I'm sorry. I don't do settlement negotiations with me. Thank you, Your Honor. Okay. The matter just argued will be submitted. And the Court will stand in recess for the day.
judges: Rymer, W. Fletcher, Clifton